Jerry Lee HARVEY, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, et al., Defendants.

Civ. A. No. 88–1680.

United States District Court, District of Columbia.

Aug. 21, 1990.

---

after "FOIA"], and the Privacy Act, 5 U.S.C. § 552a (1977 & Supp. I 1990) [hereinafter "PA"], seeking documents allegedly held by defendants the Department of Justice ("DOJ"), the United States Attorney's Offices ["USAO"] for the Southern District of Florida and the Eastern District of Missouri,[1] the United States Parole Commission ["Parole Commission"], the Executive Office of the United States Attorney ["EOUSA"] and the United States Bureau of Prisons ["BOP"]. Plaintiff also seeks attorney's and researcher's fees, and costs. This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56.[2]

Plaintiff submits exhibits in support of his motion.[3] Defendants Parole Commission, BOP, and the EOUSA submit affidavits and exhibits in support of their motions.

## I. FACTUAL BACKGROUND

Plaintiff brings a seven count complaint which alleges that each of the defendants failed to comply with his requests for information pursuant to the FOIA and the PA.

Jerry Lee Harvey, Lauderhill, Fla., pro se.

Nathan Dodell, Asst. U.S. Atty., Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

Plaintiff, proceeding *pro se*, was incarcerated at a federal correctional facility in Milan, Michigan at the time this action was commenced. He brings this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552 (1977 & Supp. I 1990) [herein-

### A. FOIA/PA Requests to the Department of Justice

In a letter dated December 26, 1987, plaintiff made a request to the DOJ for a copy of his pre-sentence investigation report. Complaint ¶ 5; Plaintiff's Exhibit ["Pl.Ex."] pp. 1–3 to his Motion for Partial Summary Judgment. The DOJ allegedly responded that there would be a delay in processing his request due to a backlog created by similar requests. Complaint ¶ 6.

The DOJ subsequently forwarded plaintiff's request for his pre-sentence investiga-

**1.** The Executive Office of the United States Attorney ["EOUSA"] is handling the FOIA requests made by plaintiff to the USAO for the Southern District of Florida and the Eastern District of Missouri.

**2.** Defendant Parole Commission tailored its motion as a "Motion to Dismiss," however, affidavits and exhibits accompany its motion. Therefore, pursuant to Fed.R.Civ.P. 12(b)(6), this mo-

tion will be treated as a Fed.R.Civ.P. 56 Motion for Summary Judgment.

**3.** Plaintiff also filed two Motions for Default Judgment pursuant to Fed.R.Civ.P. 55 against defendant BOP which BOP opposed. Since treatment of the cross-motions for summary judgment is dispositive of this action, the Court does not address plaintiff's two motions for Default Judgment and the opposition thereto.

tion report to the Parole Commission[4] (Pl.Ex. p. 21) which in turn forwarded the request to its North Central Regional Office ["Regional Office"] in Kansas City, Missouri. This Regional Office processes "first party" disclosure requests from persons within the jurisdiction where plaintiff Harvey was then an inmate (the federal correctional facility in Milan, Michigan). The Regional Office informed plaintiff that it lacked a parole file on him and that one would not be established until after his initial parole hearing. United States Parole Commission Exhibit ["USPC Ex."] 3 (attachment to USPC Motion).

### B. FOIA/PA Requests to the United States Parole Commission

Plaintiff submitted undated letters to defendant Parole Commission which requested "any and all information in connection to his name." McLeod Dec. ¶ 6, 7. These requests were forwarded to the Regional Office which advised plaintiff that no records existed which pertained to him. *Id.*, USPC Ex. 5, 7. The Regional Office informed plaintiff that the Parole Commission lacked a parole file on him and that one would not be established until approximately two weeks after his initial parole hearing. USPC Motion at 1–2, USPC Ex. 5, 7.

Plaintiff's initial parole hearing was scheduled for July, 1988. During this parole hearing the parties determined that further information was needed. Therefore, the hearing was postponed to complete the record. Subsequent to filing this action, plaintiff requested a copy of the audio tape of the above referenced hearing. USPC Ex. 8. Plaintiff asked that the tape be sent to his attorney, James McMasters, in Coral Gables, Florida. McLeod Dec. ¶ 8. A parole file was established for plaintiff at about this time. *Id.* In a letter dated

August 30, 1988, Michael Antonelli, a paralegal, submitted a second request on plaintiff's behalf for "all documents" in plaintiff's file. *Id.* ¶ 10, USPC Ex. 10.

On December 12, 1988, the Parole Commission released seventy-four pages of documents and a copy of the audio tape of plaintiff's partial parole hearing. *Id.* ¶ 13, USPC Ex. 13. The Parole Commission asserts that this material is all that was contained in plaintiff's parole file at that time.

On March 22, 1989, the Parole Commission advised plaintiff that it received 967 pages of documents from Assistant U.S. Attorney Michael Fagan. McLeod Dec. ¶ 16. The Parole Commission informed plaintiff that if he wanted copies of this new material under the FOIA/PA, he would have to submit payment in the amount of $86.70 to cover reproduction costs. Plaintiff then requested "a copy of everything you have in the regional file, except the newly arrived 967 pages from Fagan[.]" USPC Ex. 19. The Parole Commission processed this request and released an additional seventy-seven pages but excluded the 967 pages as instructed by plaintiff.[5] McLeod Dec. ¶ 18, USPC Ex. 20.

In sum, defendant Parole Commission submits that it released all of the material responsive to plaintiff's requests that existed in his parole file as of December 1988, including a second audio tape and seventy-seven additional pages in response to new requests. USPC Motion at 1, McLeod Dec. ¶ 20.

### C. FOIA/PA Requests to the United States Attorney's Offices and to the Executive Offices for United States Attorneys

Plaintiff made undated requests to the USAOs in Fort Lauderdale and Miami,

---

4. The principal function of the Parole Commission, which is a component of the DOJ, is to enforce criminal laws. Pursuant to general exemptions, the Parole Commission is exempt from the disclosure provisions of the Privacy Act. *See* 5 U.S.C. § 552a(j)(2). Therefore, all disclosure requests for copies of a person's own records submitted to the Parole Commission under the Privacy Act are processed under the FOIA. Declaration of Janice G. McLeod

["McLeod Dec."] (attachment to the Parole Commission's Motion to Dismiss ["USPC Motion"]) at ¶ 2.

5. A subsequent request to the Parole Commission from plaintiff seeking "full disclosure" (less the 967 pages) of all materials compiled in his parole file was not responded to because it involved the same information that had already been released. McLeod Dec. ¶ 19.

Florida (the Southern District of Florida), seeking "information in connection to [him]." Complaint ¶ 8 & 11; Pl.Ex. pp. 5–6. In a letter dated May 2, 1988, the USAO for the Southern District of Florida acknowledged plaintiff's request and advised him that it was referred to the EOUSA. Pl.Ex. p. 45. Plaintiff also made undated requests to defendant USAO in St. Louis, Missouri (the Eastern District of Missouri), seeking grand jury information and "all information in connection to him." Complaint ¶ 14–15; Pl.Ex. pp. 7–8. This request was also referred to the EOUSA. Declaration of Virginia L. Wright ["Wright Dec."] ¶ 6 (attachment to Motion of Defendant Executive Office for the United States Attorneys for Summary Judgment); Pl.Ex. p. 15. Plaintiff appealed the delays in responding to his requests. Complaint ¶ 16, Pl.Ex. pp. 9–10.

The EOUSA accepted the responsibility to respond to plaintiff's requests for information from the United States Attorney's Offices for the Southern District of Florida and the Eastern District of Missouri. Plaintiff then received a letter from the EOUSA dated May 19, 1988, which advised him that his request would be handled as soon as possible. Complaint ¶ 19; Pl.Ex. p. 15.

### 1. Request to the USAO for the E.D. of Missouri

On September 16, 1988, the EOUSA informed plaintiff that a search undertaken in the USAO for the Eastern District of Missouri revealed that he was the subject of a pending law enforcement proceeding. Wright Dec. ¶ 10(a), EOUSA Ex. F. The EOUSA withheld the six boxes of records relying on FOIA exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A). Wright Dec. ¶ 10(a), EOUSA Ex. F. The EOUSA asserts that these records pertained to plaintiff's impending trial and that; plaintiff received most of this material during pre-trial discovery; he had access to all of the transcripts relevant to the proceedings; and, that as a result of his impending trial, segregation of the records could not be done at the same time as trial preparation. Wright Dec. ¶ 10(a). Plaintiff was also ad-

vised that a disclosure determination would be made on these records upon completion of his pending criminal trial. *Id.* Although this criminal case is closed, plaintiff is in the process of appealing his conviction. *Id.* ¶ 36. The EOUSA asserts that it will make a disclosure determination on the six boxes of documents upon receipt of copying fees currently owed by plaintiff. *Id.*

### 2. Request to the USAO for the S.D. of Florida

On September 16, 1988, the EOUSA informed plaintiff that a search in the USAO for the Southern District of Florida revealed eight cases, criminal and civil, responsive to plaintiff's request. *Id.* ¶ 10(b), EOUSA Ex. F. Plaintiff was advised that two case files which could not be located would be processed upon their discovery, and that records of a civil case pending against plaintiff were not provided to avoid charging fees for material he may already possess, and to prevent duplication of material of which he could gain access from the Clerk of the Court. Wright Dec. ¶ 10(b)(1)–(2). Plaintiff was also advised that the remaining five case files consisted of 397 pages of USAO documents which were accorded the following treatment: 182 pages were entirely withheld pursuant to FOIA exemptions, 5 U.S.C. § 552(b)(5) & (7)(D); three pages were partially excised pursuant to another FOIA exemption, 5 U.S.C. § 552(b)(7)(C); and 212 pages were released in their entirety to plaintiff. *Id.* ¶ 10(b)(3), EOUSA Ex. F. Grand jury records located in one of the five cases were withheld pursuant to 5 U.S.C. § 552(b)(3). Wright Dec. ¶ 10(b)(3). Other records sought by plaintiff which originated in other components within the DOJ were referred to the proper offices. Finally, plaintiff was informed that the processing fee for duplicating the 215 released pages was $11.50.

Since the time the EOUSA first responded to plaintiff's FOIA requests additional information has been obtained. First, in further reviewing the records pertaining to the six criminal and civil matters described above, the EOUSA uncovered 200 pages of

state court records that may be obtained by plaintiff for $.10 per page. *Id.* ¶ 32. Second, the EOUSA has been advised about the two missing files. A criminal case was being prosecuted by the IRS against plaintiff at the time the EOUSA filed its motion. Wright Dec. ¶ 33. United States Attorney's Office files pertaining to that case are held by the IRS. The USAO for the Southern District of Florida located two "dummy files" which consist of an appellate brief, a file jacket cover and various court filings. The EOUSA asserts that it will process the dummy files and the documents held by the IRS upon completion of plaintiff's appeal and receipt of his payment. *Id.* Finally, the Southern District of Florida's USAO found two additional matters concerning plaintiff that are still pending. The USAO received these cases at about the same time plaintiff made his FOIA/PA requests and asserts that a disclosure determination will be made upon receipt of plaintiff's fee payment. *Id.* ¶ 35.

### 3. EOUSA Response

On September 16, 1988, a package containing the released documents was sent to plaintiff. This package was returned to the EOUSA on two occasions marked "return to sender" and "left no forwarding address." After these unsuccessful attempts to reach plaintiff, the Clerk of the Court was contacted to verify plaintiff's address. Upon obtaining a new address, these documents were again sent to plaintiff. Wright Dec. ¶ 12, EOUSA Ex. G. On March 28, 1989, plaintiff was advised that the EOUSA would not continue processing his FOIA/PA requests unless the $11.50 duplication charges were paid. *Id.* ¶ 13, EOUSA Ex. H.

### D. *FOIA/PA Requests to the Federal Bureau of Prisons*

In letters dated October 29, 1987, and November 11, 1987, plaintiff sent requests to Dick Clark, the Associate Warden, and to the Records Department of the Federal Correctional Institution at Milan, Michigan, for "information in connection to his name," and for every financial record pertaining to all of the inmates presently and formerly housed in "H" dorm. Complaint ¶ 27; Pl.Ex. pp. 27–29, 32–34. By letters dated December 28, 1987, and January 22, 1988, Clair A. Cripe, General Counsel of the BOP, acknowledged plaintiff's requests and advised him to first review all releasable records locally and, if further access was desired, to submit his requests to BOP's FOIA office in Washington, D.C. Pl.Ex. pp. 37, 44; Declaration of C.B. Faulkner ¶ 5, BOP Ex. B. Plaintiff's requests were referred from BOP's Office of General Counsel to its Regional Office. Faulkner Dec. ¶ 6, BOP Ex. C.

On August 25, 1988, the Regional Office informed plaintiff that certain records were releasable. Faulkner Dec. ¶ 8, BOP Ex. E. It also informed plaintiff that he could review and obtain copies of these records at the federal facility where he was imprisoned. Eleven pages of documents were either withheld in full or in part from plaintiff pursuant to claimed FOIA exemptions. Faulkner Dec. ¶ 9.

### II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only "if the pleadings, ... together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment the court must consider the pleadings, related documents and evidence in a light most favorable to the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). "If the motion for summary judgment is properly supported, the burden shifts to the non-movant to 'set forth specific facts showing that there is a genuine issue for trial.' " *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir. 1987) (quoting Fed.R.Civ.P. 56(c)). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby,*

477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. *Documents Allegedly Withheld by the DOJ and the Parole Commission*

Count I of the complaint asserts that the DOJ denied plaintiff's FOIA/PA request for a copy of his pre-sentence investigation report. This request was forwarded by DOJ to the Parole Commission. Count VI alleges that the Parole Commission failed to process plaintiff's requests for "all information in connection to his name." Therefore, the Court first addresses Counts I and VI which, in effect, challenge the actions taken by the Parole Commission.

■ The Parole Commission contends that it released all materials found in plaintiff's parole file on December 12, 1988, and that this disclosure satisfied his numerous FOIA/PA requests and renders this lawsuit moot as to it.[6] McLeod Dec. ¶ 13, USPC Ex. 13. The Parole Commission also informed plaintiff that it received 967 pages of documents concerning him subsequent to December 17, 1988, from Assistant U.S. Attorney Fagan. McLeod Dec. ¶ 16. This material was incorporated into plaintiff's parole file and has since been made available to him. USPC Motion at 2. However these documents came into the Parole Commission's possession subsequent to its receipt of the initial requests and to the initiation of this lawsuit. Therefore, they are not germane to this action.[7]

■ This Court finds that the Parole Commission processed plaintiff's numerous FOIA/PA requests and provided him with all of the information responsive to his requests, including the presentence investigation report. The Parole Commission released the entire contents of plaintiff's parole file as it existed at the time of its initial response in December of 1988, without excision. This included the audio tape of plaintiff's first incomplete parole hearing of July, 1988. The Parole Commission did not withhold information pursuant to any claimed statutory exemptions.

Accordingly, judgment shall be entered against plaintiff as to Counts I and VI of his complaint pursuant to Fed.R.Civ.P. 56.

### B. *Documents Withheld by the USAO and the EOUSA*

■ Counts II and III of the complaint assert that the USAO for the Southern District of Florida failed to respond to plaintiff's requests under the FOIA/PA for "information in connection to [him]." Count IV alleges that the USAO for the Eastern District of Missouri failed to provide plaintiff with grand jury information which he requested under the FOIA/PA. Count V avers that the DOJ and the EOUSA did not process plaintiff's FOIA/PA requests.

As previously discussed, the USAO for the Southern District of Florida located six cases responsive to plaintiff's broad request.[8] Of the six cases, a civil case which was pending at the time of his request contained filings and correspondence written by plaintiff or his attorney. This case record was not produced because the EOUSA concluded that plaintiff might already have this information, and the information was available from the Clerk of the Court. Additionally, plaintiff was advised that the

---

6. In her Declaration, Ms. McLeod specifically acknowledges plaintiff's request for his pre-sentence investigation report, McLeod Dec. ¶ 4, but does not detail whether the Parole Commission released a copy of the pre-sentence investigation report to plaintiff. However, the Parole Commission does assert that it released *all* information responsive to plaintiff's requests without excision. *Id.* ¶ 20. Furthermore, plaintiff's later requests to the Parole Commission do not concern his pre-sentence investigation report.

7. The FOIA does not require the automatic mailing of updated materials. *See Mandel Grunfeld and Herrick v. United States Customs Service*, 709 F.2d 41, 43 (11th Cir.1983); *Lybarger v. Cardwell*, 577 F.2d 764, 767 (1st Cir.1978); *see generally, Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 154, 100 S.Ct. 960, 970, 63 L.Ed.2d 267 (1980) ("agencies generally are not obligated to provide extensive services in fulfilling FOIA requests").

8. As previously discussed, plaintiff was advised that two of these case files could not be located.

EOUSA did not want to unnecessarily expend resources to respond to such a request. The EOUSA did not rely on any FOIA exemption when it withheld this information. Thus, if plaintiff still desires these records the EOUSA must produce them. Of course, plaintiff must absorb the duplication costs.

The remaining five cases discovered by the USAO for the Southern District of Florida consisted of 397 pages of internal office documents. Two hundred-twelve pages were released in their entirety, three pages were partially excised pursuant to 5 U.S.C. § 552(b)(6) and (7)(C), and 182 pages were completely withheld pursuant to 5 U.S.C. § 552(b)(5), (6), (7)(C) and (D). Grand jury records located in one of these five cases were withheld pursuant to 5 U.S.C. § 552(b)(3).

The EOUSA asserts that it excised material from three documents pursuant to 5 U.S.C. § 552(b)(6) [hereinafter "Exemption 6"] and (7)(C) [hereinafter "Exemption 7(C)"]. Exemption 6 permits a governmental agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that such [material] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy,...." 5 U.S.C. 552(b)(7)(C).

Pursuant to claimed Exemptions 6 and 7(C), the EOUSA first excised the identity and phone number of a potential trial witness from undated hand written notes. Secondly, the EOUSA excised the identity and phone number of a third party who was referenced in correspondence written by Southern Bell's District Security Manager regarding telephone toll billing records. Finally, the third document excised is a duplicate of the above referenced letter.

The EOUSA asserts that it properly excised this material to protect the identities of potential trial witnesses, and the name, address, and telephone number of a third party whose telephone toll billing records

had been subpoenaed. Wright Dec. ¶ 24. This Court finds that the non-disclosure of the excised information is supported by Exemption 7(C). To withhold information pursuant to this exemption the EOUSA must first show that the information was "'compiled for law enforcement purposes.'" *King v. Department of Justice*, 830 F.2d 210, 229 (D.C.Cir.1987) citing *FBI v. Abramson*, 456 U.S. 615, 622, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting 5 U.S.C. § 552(b)(7) (1982)). Information gathered by the USAO which concerns potential trial witnesses, and a third party whose toll billing records had been subpoenaed satisfies this requirement. Secondly, the agency must demonstrate that "production would have one of the undesirable effects enumerated by the exemption." *King, supra* at 229, citing *FBI v. Abramson, supra.* Releasing the names and numbers of potential trial witnesses and a third party whose phone records had been subpoenaed "could reasonably be expected to constitute an unwarranted invasion of personal privacy,...." 5 U.S.C. § 552(b)(7)(C).

Exemption 7(C) is applied by balancing the "privacy interest" against the "public interest in disclosure." *Keys v. Department of Justice*, 830 F.2d 337, 346 (D.C.Cir. 1987) citing *Reporters Committee for Freedom of the Press v. Department of Justice*, 816 F.2d 730, 737 (D.C.Cir.1987), *rev'd on other grounds*, 485 U.S. 1005, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988). In *Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, ——, 109 S.Ct. 1468, 1485, 103 L.Ed.2d 774 (1989), the Supreme Court held that a "third party's request for law-enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency ..., the invasion of privacy is 'unwarranted.'" Here, the privacy interest of the individuals named in these documents outweighs any public interest in the release of the information. This Court concludes that the EOUSA's reliance on Exemption 7(C) was warranted.

■ ] Pursuant to 5 U.S.C. § 552(b)(5) [hereinafter "Exemption 5"], the EOUSA withheld 150 pages of documents. These documents were withheld to protect attorney work-product prepared in anticipation of litigation and to maintain an asserted deliberative process privilege. These documents consist of trial notes, potential witness testimony, evidentiary notes, and telephone notes. Three other pages were withheld in their entirety pursuant to Exemption 5. Two of these pages are an inter-agency memorandum from AUSA Robert O'Neill to Linda Hertz of the Civil Division which concern agency recommendations regarding litigation that involved plaintiff. The third page is a memorandum from Ms. Hertz to Debbie Watson of the Criminal Division regarding litigation that involved plaintiff.

Exemption 5 excludes from disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The policies underlying the attorney work-product privilege are "clearly incorporated into Exemption 5." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 160, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975). The privilege embodied in Exemption 5 "rest[s] ... upon the policy of protecting the 'decision-making processes of government agencies.' " *Id.* at 150, 95 S.Ct. at 1516 (quoting *Tennessean Newspapers, Inc. v. FHA*, 464 F.2d 657, 660 (6th Cir.1972)).

■ "Exemption 5 is intended to protect the deliberative process of government and not just deliberative material (citation omitted)." *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 773 (D.C.Cir.1988) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977)). The deliberative process privilege is limited to materials which are pre-decisional and deliberative. *EPA v. Mink*, 410 U.S. 73, 88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973). Although an agency must disclose documents which explain its final decision, it may withhold documents which are pre-decisional. *Wolfe, supra* at 774 (citations omitted).

Attorneys at the USAO for the Southern District of Florida prepared 150 pages of trial notes, evidentiary notes, potential witness testimony and telephone notes in anticipation of litigation involving plaintiff Harvey. The release of these documents would expose the thoughts, decision-making processes and trial strategy of the U.S. Attorneys concerning anticipated litigation against plaintiff. This result would contravene the attorney work-product doctrine and Exemption 5. Accordingly, the EOUSA properly withheld these 150 pages of documents pursuant to Exemption 5.

■ The remaining three pages contain communications and recommendations made in anticipation of litigation. These three pages of inter-agency memoranda are covered by both the attorney work-product doctrine and the deliberative process privilege. These documents are deliberative because they reflect recommendations and communications concerning the "decision-making processes of government agencies." *NLRB v. Sears, Roebuck & Co., supra.* The documents are pre-decisional because they concerned avenues which the agencies contemplated taking in regard to possible litigation involving plaintiff. Therefore, these three inter-agency memoranda were properly withheld by the EOUSA pursuant to Exemption 5.

■ A letter from AUSA Neil Karadbil to District Attorney Andrew Slater regarding a potential trial witness was withheld by the EOUSA under the authority of Exemptions 6 and 7(C) to allegedly protect a potential trial witness' privacy. This correspondence between state and federal attorneys concerned a potential trial witness and, therefore, this information was compiled for "law enforcement purposes" within the meaning of Exemption 7(C). Furthermore, application of Exemption 7(C) is appropriate because it operates to protect the personal privacy of a witness from an "unwarranted invasion." [9] This letter was

9. The record before the Court fails to disclose whether this particular witness testified at trial.

38

properly withheld by the EOUSA pursuant to Exemption 7(C).

■ The EOUSA asserts that the following documents, which were provided by local law enforcement authorities during the course of a criminal investigation, are not releasable pursuant to 5 U.S.C. § 552(b)(7)(D) [hereinafter "Exemption 7(D)"]: a one page internal Fort Lauderdale Police Department document; five pages of letters from the Fort Lauderdale Police Department to third parties regarding authorization for the interception of wire and/or oral communications; and twenty-two pages of three Fort Lauderdale Department Intelligence Reports (one is a duplicate).

Under Exemption 7(D) the following materials may not be disclosed:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such ... information ... (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D) (Supp. I 1990). The Fort Lauderdale Police Department is an agency which compiled the information contained in the twenty-eight pages of documents during a criminal investigation. Therefore, these documents were "compiled for law enforcement purposes" under Exemption 7(D). Furnishing the documents to plaintiff can reasonably be expected to unveil the identity of and information provided by a confidential source. Disclosure of these documents would dissuade persons from providing information to law enforcement authorities because the sources which provided the information would fear that their identities would not remain confidential. This Court finds that the twenty-eight pages of documents provided in confidence by the Fort Lauderdale Police Department to the USAO were properly withheld by the EOUSA pursuant to Exemption 7(D).

■ The EOUSA withheld a twelve page grand jury transcript located in the USAO for the Southern District of Florida pursuant to 5 U.S.C. § 552(b)(3) [hereinafter "Exemption (3)"]. Carole M. Fernandez, the AUSA who reviewed the withheld grand jury material, has asserted that "disclosure would impinge upon protected grand jury secrecy." Declaration of Carole M. Fernandez ["Fernandez Dec."] (attachment to EOUSA Motion) ¶ 3. Additionally, the Internal Revenue Service ["IRS"] returned the EOUSA's referral package requesting that the EOUSA determine the releasability of four pages of documents which contained grand jury information. After an examination the EOUSA concluded: a one page document was releasable; and, a two page inter-agency memorandum, dated June 11, 1985, from the Deputy Regional Counsel of the IRS to the DOJ's Tax Division and a one page undated IRS memorandum were withheld to protect discussions pertaining to a federal grand jury pursuant to Exemption 3. The EOUSA also maintains that the two page inter-agency memorandum and the one page IRS memorandum can be withheld pursuant to Exemptions 5, 6 and 7(C).

Exemption (3) provides; "This section (§ 552 of the FOIA) does not apply to matters that are—(3) specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The EOUSA maintains that the grand jury transcript is exempt from disclosure pursuant to the general rule of secrecy codified at Fed.R.Crim.P. 6(e)(2). This provision directs that "any person to whom disclosure is made under paragraph

---

In permitting the application of Exemption 7(C), this Court assumes that the requester does not know the identity of the person named in the withheld document.

(3)(A)(ii) of this subdivision (government personnel deemed necessary by a government attorney to assist that attorney to enforce federal criminal laws) shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Fed.R.Crim.P. 6(e). The notes of the Advisory Committee reveal: "This rule continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure (citations omitted)." Fed.R.Crim.P. 6(e) (Note to Subdivision (e)) (1990).

"[A]ny documents which are generated by the Grand Jury proceedings ..., fall within the protection of Rule 6(e) and should not be released under the FOIA." *Joseph Schlitz Brewing Co. v. SEC,* 548 F.Supp. 6, 9 (D.D.C.1982). A petition for disclosure of grand jury material should be "filed in the district where the grand jury convened" pursuant to Fed.R.Crim.P. 6(e). *See Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 225–226, 99 S.Ct. 1667, 1676, 60 L.Ed.2d 156 (1979). Therefore, to obtain these grand jury documents plaintiff must proceed under Fed.R.Crim.P. 6(e) in the District Court for the Southern District of Florida.

## C. *Documents Withheld by the BOP*

Count VII alleges that the BOP did not respond to plaintiff's FOIA/PA requests for information relating to his confinement at the Federal Correctional Institution, in Milan, Michigan. The BOP released several documents in response to plaintiff's request and withheld, either in full or in part, eleven pages pursuant to Exemptions 5 and 7(C); a photocopy of an envelope; memoranda; a letter; and in-transit information.

 A single page memorandum was prepared by the Milan prison staff at the direction of the Attorney Advisor, Office of General Counsel. It contained the Milan staff's responses to the lawsuit filed by plaintiff against the BOP. This memorandum was used to formulate the government's response to plaintiff's case against the agency. It was withheld in its entirety as a pre-decisional attorney work-product pursuant to Exemption 5.

This document was prepared in contemplation of upcoming litigation. It contains the impressions and opinions of professional staff regarding the projected nature and scope of the agency's response to plaintiff's case. Exemption 5 reflects Congress' desire to withhold an attorney's work product from disclosure to the public. *NLRB v. Sears, Roebuck & Co., supra,* 421 U.S. at 154, 95 S.Ct. at 1518. The professional staff acted as an agent for the Attorney Advisor because it prepared the document to satisfy the attorney's request. The Court finds that the BOP properly withheld this document from disclosure pursuant to Exemption 5.

 The information contained within the remaining documents consists of the names of persons who identified plaintiff, personal information, and the location of people who were separated from plaintiff to ensure their mutual safety. These documents were withheld pursuant to Exemption 7(C) which allows an agency to withhold investigative records compiled for law enforcement purposes if disclosing the information could reasonably constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

A one page photocopy of an envelope which "contains the name and address of a correspondent of an inmate other than the Plaintiff" was withheld to "protect the personal privacy and safety of this individual." Faulkner Dec. ¶ 9(C). Similarly, the identity of various named individuals who, in the judgment of the BOP, should be separated from plaintiff to protect their mutual safety was excised from the following one page documents: 1) a CIM Case Information summary dated September 3, 1987; 2) a letter written by an Assistant U.S. Attorney dated March 31, 1987; 3) memoranda written by BOP staff members dated April 14, 1987, and March 17, 1988; 4) an investigative report issued by a BOP staff member dated July 15, 1988; and 5) in-transit information in documents created by the BOP staff dated July 10, 21, and 24 of 1987. The BOP also asserts that personal information pertaining to an individual named by Drug Enforcement Administra-

tion staff was properly excised from a memorandum dated January 12, 1981.

All of the documents listed in the preceding paragraph were records "compiled for law enforcement purposes." *See King v. Department of Justice, supra.* Secondly, their production would have the undesirable effect of invading a third party's personal privacy under Exemption 7(C). The Supreme Court takes a liberal view of what constitutes an "unwarranted invasion of personal privacy" within the meaning of Exemption 7(C).

> [A] third party's request for law-enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no "official information" about a Government agency, but merely records what the Government happens to be storing, the invasion of privacy is "unwarranted."

*U.S. Dep't. of Justice v. Reporters Committee,* 489 U.S. at ——, 109 S.Ct. at 1485. Accordingly, the BOP properly withheld these documents pursuant to Exemption 7(C).

## IV. CONCLUSION

Since the Parole Commission released the entire contents of plaintiff's parole file, summary judgment is entered against plaintiff as to Counts I and VI. The Court also grants summary judgment in favor of the Department of Justice, the Justice Management Division, the USAO for the Eastern District of Missouri and the Southern District of Florida, and the EOUSA on Counts II, III, IV, and V. Plaintiff must proceed under Fed.R.Crim.P. 6(e) to obtain the grand jury information withheld by the USAO for the USAO for the Southern District of Florida in the District Court for the Southern District of Florida. Summary judgment is also granted to the BOP on Count VII.